IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| DEMETRIUS ALLEN, | ) | |
| | ) | CASE NO. 1:18CV736 |
| | ) | |
| Petitioner, | ) | JUDGE JEFFREY J. HELMICK |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | KATHLEEN B. BURKE |
| WARDEN JOHN COLEMAN, | ) | |
| | ) | |
| | ) | **REPORT & RECOMMENDATION** |
| Respondent. | ) | |

Petitioner Demetrius Allen ("Petitioner" or "Allen") filed this habeas corpus action pursuant to 28 U.S.C. § 2254 on April 2, 2018. Doc. 1. Allen is detained at the Toledo Correctional Institution, having been found guilty by a Cuyahoga County, Ohio, Court of Common Pleas jury of two counts of aggravated murder with attendant course of conduct and firearm specifications, three counts of attempted aggravated murder with attendant firearm specifications, and one count of having a weapon under a disability. *State v. Allen*, Case No. CR-10-540250-B (Cuyahoga Cnty. Common Pleas Ct. filed June 7, 2011). The trial court sentenced Allen to 20 years to life on each aggravated murder count and three years on each attendant firearm specification, to be run consecutively; three years on the attempted aggravated murder counts and three years on each firearm specification, to be run concurrently, and one year on the having a weapon under a disability count, to be run concurrently, for a total of 46 years to life in prison. Doc. 9-1, p. 22.[1]

On April 2, 2018, Allen filed his Petition for Writ of Habeas Corpus setting forth six grounds for relief. Doc. 1. This matter has been referred to the undersigned Magistrate Judge for a Report and Recommendation pursuant to Local Rule 72.2. As set forth more fully below,

---
[1] Doc. page citations are to ECF Doc. page numbers.

1

Allen's Petition is barred by the statute of limitations. Thus, the undersigned recommends that his Petition for Writ of Habeas Corpus (Doc. 1) be **DISMISSED**. Also pending are Allen's Motion for Transcripts (Doc. 11), Motion for the Complete State Court Record (Doc. 12), and Motion for extension of time to file a traverse (Doc. 14) which the undersigned **DENIES**.

## I. Background

In a habeas corpus proceeding instituted by a person in custody pursuant to the judgment of a state court, the state court's factual findings are presumed correct. 28 U.S.C. § 2254(e)(1). The petitioner has the burden of rebutting that presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see also Railey v. Webb*, 540 F. 3d 393, 397 (6th Cir. 2008).

The following summary of underlying facts is taken from the opinion of the Cuyahoga County Court of Appeals, Eighth Appellate District of Ohio:

> {¶ 3} In the early evening of July 17, 2010, five men were socializing in front of a house located near the intersection of East 123rd Street and Signet Avenue in Cleveland, Ohio. At approximately 8:30 PM, two men approached, one armed with an assault rifle, and unleashed a barrage of gunfire on the assembled men. At the end of the onslaught, two men, Miley Slaughter and Kenneth Green, were dead. Two others, Timothy Sisson and Antwon Weems, were wounded, and a fifth man, Willie Tyson, escaped unharmed.
>
> \* \* \*
>
> {¶ 6} At trial, the state presented the testimony of 22 witnesses, including Eric Brown [who] testified that on the evening of July 17, 2010, after playing cards on his front porch, went inside to sit in his living room. Brown later looked through his bay window and saw Slaughter, Green, Sisson, Weems, and Tyson socializing in front of his house.
>
> {¶ 7} Brown testified that he heard gunfire a short time later and looked through the window and saw Allen discharging a military-style automatic gun at the men assembled, who attempted to flee. Two of the men ran up the driveway and others ran down the sidewalk. While continuing to shoot, Allen ran across Brown's front lawn, Slaughter fell in the driveway, and Allen stood over him and stated: "I got your bitch ass." Brown testified that throughout the rampage, Logan was standing close to Allen and was very hyped up, but did not have a weapon.
>
> {¶ 8} Brown [] immediately closed the curtains to the bay window after witnessing the shootings, and was somewhat surprised that Allen had not seen him watching. After the assailants fled, Brown exited his house and found Slaughter dead in his driveway. Brown

found Green lying in his backyard, bleeding and grasping for air. Brown took off his shirt and applied pressure to the wound until paramedics arrived.

{¶ 9} Brown had an unobstructed view of Allen and Logan from his bay window and stated that he recognized Allen from the neighborhood, but did not know his name. Because of a basic distrust for the police and not wanting to be labeled a "snitch," Brown was reluctant to cooperate with the investigation. However, Brown described Allen and Logan to his neighbors and subsequently identified both Allen and Logan from a police photo array.

{¶ 10} Weems testified that he and the others immediately started running once the gunfire started. Weems ran up Brown's driveway, where he saw Slaughter, who had fallen to the ground. Weems, while trying to help Slaughter, could still hear gunfire and could see the sparks from the gunshots. Weems turned around and saw the faces of the assailants. Weems escaped through a neighbor's backyard, but sustained a gunshot wound to his foot.

{¶ 11} Weems recognized both assailants because he had gone to high school with Logan and knew the mother of Allen's child, but did not remember their names. Weems testified that Allen was the shooter. Weems, like Brown, initially did not cooperate with the police investigation, hinting that he had contemplated taking matters into his own hands. However, Weems eventually gave a statement to the police and subsequently identified both men from a photo array.

{¶ 12} Sisson testified that on the night of the shooting, he initially heard three gunshots, followed by rapid fire from an automatic weapon, and then everyone who had assembled began to disperse. Sisson stated that a light-complexioned black male, armed with a gun, approached, and continued to shoot. Sisson, who testified that he did not get a good look at the assailant, fled in the direction of East 123rd Street. As Sisson ran, he could feel the heat from the bullets passing him and felt certain that he would be killed. Sisson was grazed on his foot by a bullet, and was treated and released from the hospital.

{¶ 13} Tyson testified that he escaped the onslaught unharmed by fleeing and hiding in a neighbor's garage until the shooting ended. When Tyson exited the garage, he discovered Slaughter's dead body in Brown's driveway and found Green, who later died, lying in the backyard.

{¶ 14} Detectives Wally Everett and Michael Smith of the Cleveland Police Department's Homicide Unit testified they interviewed several individuals following the shooting. Detectives Everett and Smith confirmed that both Brown and Weems were very reluctant to cooperate with the investigation, but eventually did, and subsequently on separate occasions identified Allen and Logan from photo arrays.

{¶ 15} Allen's younger brother, Deandre Allen, testified for the defense. Deandre testified that earlier that evening, Allen and Logan took him and his friend Dapolo Green to a shoe store near the Lee–Harvard Shopping Center. Deandre stated that Allen and Logan dropped them off at home, left together, and never returned that night.

3

> {¶ 16} Allen and Logan took the stand in their own defense. Both men testified to being lifelong friends. Both men testified that in the early evening of July 17, 2010, they took Allen's younger brother and his friend to a shoe store near the Lee–Harvard Shopping Center. Allen and Logan testified that they took his younger brother and his friend back to the house and then went to sell drugs. Logan confirmed that he went to high school with Weems and added that they played middle league football when they were younger. Both Allen and Logan maintain they had nothing to do with the shooting.
>
> {¶ 17} On rebuttal, the state presented the testimony of Dapolo Green, who testified that the day before the shooting, Deandre indicated that Allen and Logan were going to "shoot up the block" the following day. Green testified that he did not believe Deandre. Green confirmed that Allen and Logan had driven him and Deandre to the shoe store, that they were dropped off at Allen's home, that Allen and Logan left together, and that they did not return that night.

*State v. Allen*, 2012 WL 1454552, at *1-3 (Oh. Ct. App. April 26, 2012).

### A. State Trial Court

On August 4, 2010, a Cuyahoga County Grand Jury indicted Allen on two counts of aggravated murder against two victims, three counts of attempted aggravated murder against three victims, and one count of having a weapon under disability. Doc. 9-1, pp. 4-11. Each aggravated murder count had multiple courses of conduct specifications and firearm specifications and the attempted aggravated murder counts had two firearm specifications. Doc. 9-1, pp. 4-10. Allen, through counsel, pleaded not guilty. Doc. 9-1, p. 12.

The case proceeded to trial. After the state rested, Allen filed a motion for acquittal under Rule 29, which the trial court denied. Doc. 9-1, p. 19. The jury found Allen guilty on all counts. Doc. 9-1, p. 21. On July 11, 2011, the trial court sentenced him to 20 years to life on each aggravated murder count and three years on each attendant firearm specification, to be run consecutively; three years on the attempted aggravated murder counts and three years on each firearm specification, to be run concurrently, and one year on the having a weapon under a disability count, to be run concurrently, for a total of 46 years to life in prison. Doc. 9-1, p. 22

### B. Direct Appeal

On July 8, 2011, Allen, through new counsel, appealed to the Eighth District Court of Appeals, Cuyahoga County, Ohio. Doc. 9-1, p. 24. In his brief, Allen set forth the following assignments of error:

> 1. Appellant's convictions are against the manifest weight of the evidence.
>
> 2. The trial court erred when it denied appellant's motion for acquittal under Crim.R. 29 because the State failed to present sufficient evidence to establish beyond a reasonable doubt the elements necessary to support the convictions.
>
> 3. Appellant was deprived of his due process rights and his rights to a fair trial by jury under the Sixth Amendment of the U.S. Constitution and Article I, Section 10 of the Ohio Constitution where issues of sleeping jurors were not timely addressed.
>
> 4. Suggestions of potential gang affiliation and improper comments about defense counsel resulted in prejudice and deprived appellant of his federal and state constitutional rights to due process and a fair trial.
>
> 5. Defendant was denied his right of confrontation and cross-examination when the court permitted hearsay information.
>
> 6. The trial court erred by imposing separate sentences for allied offenses of similar import.

Doc. 9-1, p. 48. On April 26, 2012, the Ohio Court of Appeals affirmed the judgment of the trial court. Doc. 9-1, pp. 117-138.

On June 8, 2012, Allen, pro se, appealed to the Ohio Supreme Court. Doc. 9-1, p. 141. In his memorandum in support of jurisdiction, he asserted the following propositions of law:

> 1. Appellant's convictions are against the manifest weight of the evidence.
>
> 2. The trial court erred when it denied appellant's motion for acquittal under Crim.R. 29 because the state failed to present sufficient evidence to establish beyond a reasonable doubt the elements necessary to support the convictions.
>
> 3. Appellant was deprived of his due process rights and his rights to a fair trial by jury under the Sixth Amendment of the U.S. Constitution where issues of sleeping jurors were not timely addressed.
>
> 4. Suggestions of potential gang affiliation and improper comment about defense counsel resulted in prejudice and deprived appellant of his federal and state constitutional rights to due process and a fair trial.

> 5. Defendant was denied his right of confrontation and cross-examination when the court permitted hearsay information.
>
> 6. The trial court erred by imposing separate sentences for allied offenses of similar import.

Doc. 9-1, p. 142. On September 5, 2012, the Ohio Supreme Court denied leave to appeal and dismissed his case "as not involving any substantial constitutional question." Doc. 9-1, p. 178.

### C. App. R. 26(B) Application for Reopening

On July 23, 2012, Allen, pro se, filed an application to reopen his appeal pursuant to Ohio App. R. 26(B). Doc. 9-1, p. 179. He argued that appellate counsel was ineffective for failing to raise, on direct appeal, the following issues:

> 1. Appellant requested to have a jury view to prove crucial elements of his defense. However, the jury view was held before opening statements, but counsel failed to request Allen to attend such.
>
> 2. Trial counsel did not summons credible witnesses on Allen's behalf at trial. To wit: Valerie Hardy, John Alexander, or anyone from K.G's foster family.
>
> 3. Trial counsel did not have an investigator to investigate Mr. Allen's alibi or being across town when the shootings took place.
>
> 4. Trial counsel was ineffective for not objecting to the prosecutor's questions to Allen concerning the Benham Boys.
>
> 5. Trial counsel was ineffective for remaining silent to replace other sleeping jurors.

Doc. 9-1, p. 181. On December 5, 2012, the Ohio Court of Appeals denied Allen's application. Doc. 9-1, pp. 223-233. Allen did not file an appeal.

### D. Federal Habeas Petition

On April 2, 2018, Allen, pro se, filed a Petition for a Writ of Habeas Corpus.[2] Doc. 1. He listed the following grounds for relief:

---

[2] Under the mailbox rule, a habeas petition is deemed filed when the prisoner gives the petition to prison officials for filing in the federal courts. *Cook v. Stegall*, 295 F.3d 517, 521 (6th Cir. 2002); *Houston v. Lack*, 487 U.S. 266, 273 (1988). Here, Allen did not sign or date his Petition. Since it cannot be determined when Allen gave his

**Ground One:** Appellant's convictions are against the manifest weight of the evidence.
  **Supporting facts:** Both Brown and Weems identification of Allen as the shooter was based on inadmissible hearsay and suggestions circumstances and were not reliable. The day of the shootings Weems said he did not recognize the shooter and it was one person. In May of 2011 while facing his own charges, he made the identification of the shooter. At trial he still testified his identification of the shooter was based on what someone else told him. Brown didn't make an identification into three days later after having multiple discussions about who the shooters were and shown photos of them. The experts findings are conflicting with what both men say they saw.

**Ground Two:** Trial court erred when it denied appellant's motion of acquittal under Crim.R. 29 because state failed to present sufficient evidence to establish beyond a reasonable doubt the elements necessary to support the convictions.
  **Supporting facts:** [same as above].

**Ground Three:** Appellant was deprived of his due process rights and his rights to a fair trial by jury under the Sixth amendment of the U.S. Constitution where issues of sleeping jurors were not timely addressed.
  **Supporting Facts:** Records reflect that certain jurors were observed sleeping throughout the trial and as early as the opening statements. This involved juror number 1 and 3. The state objected to the removal of juror number 3 and court deferred the matter to the close of all the evidence. Juror number 3 admitted to dozing off repeatedly during the trial. And Juror number 1 said he hadn't been sleeping. The court removed juror number 3.

**Ground Four:** Suggestions of potential gang affiliation and improper comment about defense counsel resulted in prejudice and deprived appellant of his federal and state constitutional rights to due process and a fair trial.
  **Supporting Facts:** This case has no relevance to gang affiliation or gang activities. On direct examination Allen was asked ha[d] he heard of the Benham boys gang. This was asked to suggest Allen may have ties to that gang, and the victims had problem with them. Allen was asked to show his tattoos to the court by the prosecutor trying to further suggest gang ties which none was presented. During closing arguments counsel statement advising the jury they couldn't trust defense counsel because their sole job is to acquit their client. The trial court sustained the defense objection, expecting the jury to overlook these comment once it was made it difficult to do.

**Ground Five:** Defendant was denied his right of confrontation and cross-examination when the court permitted hearsay information.
  **Supporting facts:** Weems testified that both his May 2011 statement and his trial testimony was a mixture of things he said and other things people told him. Weems' identification of Allen as the shooter was based on what Christopher Perkins told him. Christopher Perkins did not testify and was not subject to cross-examination. Brown

---

Petition to prison officials for filing, the Court deems the filing date to be the date the Clerk's Office received Allen's filing, April 2, 2018. *See, e.g., Beaumont v. Bottom*, 2014 WL 2548103, at *1, n.1 (W.D.Ky. June 5, 2014) (an unsigned, undated federal habeas petition that does not reveal a date presented to prison officials for mailing is deemed filed on the date the court receives it).

based his identification on discussions he had with neighbors and others who were not identified. Other witnesses testified someone name Justin showed Brown pictures. Justin did not testify at trial.

**Ground Six:** The trial court erred by imposing separate sentences for allied offenses of similar import.
    **Supporting facts:** There can be no dispute that the shootings were the result of a single act or transaction. All witness testified to hearing gunfire and running away until it stopped. This court has held that firing multiple shots in rapid succession does not create a separate animus.

Doc. 1, pp. 5-21. Respondent filed a Motion to Dismiss, arguing that Allen's Petition is barred by the statute of limitations, Doc. 9, and Allen filed a response. Doc. 13. Also pending are Allen's Motion for Transcripts (Doc. 11), Motion for the Complete State Court Record (Doc. 12), and Motion for extension of time to file traverse (Doc. 14).

## II. Law and Analysis

### A. AEDPA Statute of Limitations

Respondent contends that Allen's Petition is barred by the one-year statute of limitations set forth in 28 U.S.C. § 2244(d)(1). The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2244, limits the time within which a person in custody pursuant to the judgment of a state court may file a petition for a federal writ of habeas corpus and provides, in relevant part:

> (d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation shall run from the latest of—
>
> > (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
> >
> > (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
> >
> > (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

>  (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).

The statute of limitations is tolled for any period of time in which a properly filed petition for post-conviction relief is pending before the state courts. *Jurado v. Burt*, 337 F.3d 638, 640 (6th Cir. 2003) (citing 28 U.S.C. § 2244(d)(2)). This statutory tolling provision, however, does not "revive the limitations period (i.e., restart the clock at zero); it can only serve to pause a clock that has not yet fully run. Once the limitations period is expired, collateral petitions can no longer serve to avoid a statute of limitations." *Vroman v. Brigano*, 346 F.3d 598, 602 (6th Cir. 2003) (internal quotations and citation omitted).

"An application for post-conviction or other collateral review is 'properly filed' when its delivery and acceptance are in compliance with the applicable laws and rules governing filings, e.g., requirements concerning the form of the document, the court and office in which it must be lodged, payment of a filing fee, and applicable time limits upon its delivery." *Israfil v. Russell*, 276 F.3d 768, 771 (6th Cir. 2001) (citing *Artuz v. Bennett*, 531 U.S. 4, 8-10 (2000)). A post-conviction petition deemed untimely pursuant to Ohio law is not "properly filed" and, therefore, does not toll the statute of limitations. *Id*. at 771-772; *Pace v. DiGuglielmo*, 544 U.S. 408, 417 (2005) (a petition is not "properly filed" when the state courts reject it as untimely pursuant to state law).

### B. Allen's Petition is time-barred

The one-year statute of limitations began to run when Allen's case became final. 28 U.S.C. § 2244(d)(1)(A).[3] Allen's case became final on January 21, 2013, based on the following

---

[3] Allen has not alleged that another subsection of § 2244(d)(1) applies to his case and the matters raised in his filings do not appear to relate to another subsection.

calculation. The Ohio Supreme Court denied his direct appeal on September 5, 2012, and he had ninety days to file an appeal to the United States Supreme Court, i.e., until December 4, 2012. *Lawrence v. Florida*, 549 U.S. 327, 333 (2007) (a case becomes final under § 2244(d)(1)(A) when the 90-day time period for filing an appeal to the United States Supreme Court expires); *Gonzalez v. Thaler*, 565 U.S. 134, 150 (2012); *Bronaugh v. Ohio*, 235 F.3d 280, 283-284 (6th Cir. 2000). Allen did not appeal to the U.S. Supreme Court. On December 5, 2012, the Ohio Court of Appeals denied his Rule 26(B) Application. The 45-day period to appeal expired on January 21, 2013, without Allen having filed an appeal, and the limitations period then began to run. The one year statute of limitations period expired a year later, on January 22, 2014. Allen filed his Petition on April 2, 2018, more than four years later. His Petition, therefore, is time-barred.

### C. Allen provides no basis for equitable tolling

A petitioner is entitled to equitable tolling when he has been pursuing his rights diligently and some extraordinary circumstance prevented him from timely filing his habeas petition. *Holland v. Florida*, 560 U.S. 631, 649 (2010) (citing *Pace*, 544 U.S. at 418). The petitioner bears the burden of establishing entitlement. *Griffin v. Rogers*, 308 F.3d 647, 653 (6th Cir. 2002). A petitioner may also be entitled to equitable tolling "if he demonstrates actual innocence so that by refusing to consider his petition due to timeliness the court would cause a fundamental miscarriage of justice." *Patterson v. Lafler*, 455 Fed. App'x 606, 609 (6th Cir. 2012) (citing *Murray v Carrier*, 477 U.S. 478, 495-496 (1986)). "A valid claim of actual innocence requires 'new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Id*. (quoting *Schlup v. Delo*, 513 U.S. 298, 324 (1995)). "The evidence must demonstrate factual innocence, not mere legal insufficiency." *Id*. (citing *Bousley v. United States*, 523 U.S. 614, 623 (1998)). The

10

Supreme Court underscored that "the miscarriage of justice exception . . . applies to a severely confined category: cases in which new evidence shows 'it is more likely than not that no reasonable juror would have convicted the petitioner.'" *McQuiggin v. Perkins*, 133 S.Ct. 1924, 1933 (2013) (quoting *Schulp*, 513 U.S. at 329). The timing of an actual innocence claim "seriously undermine[s] the credibility" of such a claim. *Id*. at 1936.

In his Petition and opposition brief, Allen argues that he is entitled to equitable tolling because an external impediment to his timely filing occurred. He explains that, after his conviction became final, his family had promptly hired an attorney to file a federal habeas petition on his behalf, but that the attorney informed Allen on December 7, 2013, that such a petition would have no merit and instead advised they pursue another avenue of relief. Doc. 1, pp. 13-18; Doc. 1-5; Doc. 13, p. 3. Even crediting Allen's argument, the attorney informed Allen that he would not be pursuing a federal habeas petition prior to the one-year expiration period; Allen had until January 22, 2014, to file his habeas petition. Moreover, Allen did not file his federal habeas petition for another *four years*. He does not describe any reason why he was externally thwarted from filing his petition prior to April 2018. In short, he has not shown that he has been pursuing his rights diligently or that an extraordinary circumstance stood in his way. Nor does he show that he is factually innocent. Accordingly, Allen has not demonstrated that he is entitled to equitable tolling and his Petition is time-barred.

### D. Allen's motions for transcripts are denied

Also pending on the docket are Allen's Motion for Transcripts (Doc. 11) and Motion for Complete State Court Record (Doc. 12). In his motions, Allen requests the state trial court transcripts and all police reports and witness statements. Doc. 11, 12. Because Allen's Petition is time barred, no purpose would be served by having Respondent file the state court transcripts on the docket and provide them to Allen. Allen does not explain why he needs witness

statements and police reports; he has not provided specific allegations of fact or good cause for his request. *See Stanford v. Parker*, 266 F.3d 442, 460 (6th Cir. 2001) ("Habeas petitioners have no right to automatic discovery.  A district court has discretion to grant discovery in a habeas case upon a fact specific showing of good cause under Rule 6[(a) of the Rules Governing Section 2254 Cases]," citing *Bracy v. Gramley*, 520 U.S. 899 (1997)); *Williams v. Bagley*, 380 F.3d 932, 974 (6th Cir. 2004) (A petitioner must articulate specific allegations of fact; "Rule 6 does not sanction fishing expeditions based on a petitioner's conclusory allegations" and the burden is on the moving party to demonstrate "the materiality of the information requested.").

Accordingly, Allen's motions are denied.

### E. Allen's motion for extension of time to file traverse is denied

Finally, Allen filed a Motion for extension of time to file a "reply traverse" to Respondent's motion to dismiss.  Doc. 14.  Allen's motion is denied because it is Respondent, not Allen, who is permitted to file a reply to Respondent's motion to dismiss.  Moreover, Allen has already responded to the motion to dismiss (Doc. 13).  To the extent Allen's motion reiterates his complaint that he did not receive the trial transcripts (Doc. 14, p. 2), his motion is denied for the same reason explained above that his motion for transcripts is denied.

### III. Conclusion and Recommendation

For the reasons stated above, the undersigned recommends that Respondent's Motion to Dismiss (Doc. 9) be **GRANTED** and Allen's habeas Petition be **DISMISSED** as time-barred. Allen's Motion for Transcripts (Doc. 11), Motion for State Court Record (Doc. 12), and Motion for extension of time to file a traverse (Doc. 14) are **DENIED**.

Dated: February 11, 2019

*/s/ Kathleen B. Burke*

Kathleen B. Burke
United States Magistrate Judge

### OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation. Failure to file objections within the specified time may waive the right to appeal the District Court's order. *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); s*ee also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).